UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                Case No. 06-cr-100-pp

ALVIN FOUSE, III,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTIONS FOR A REDUCED SENTENCE UNDER THE FIRST STEP ACT OF 2018 (DKT. NOS. 287, 293)**

Six months ago, the defendant—representing himself at that time—filed a motion asking the court to reduce his sentence under the First Step Act of 2018. Dkt. No. 287. The court ordered the government to respond, dkt. no. 289, but before the deadline for the government to do so had passed, Federal Defender Services filed a motion for the defendant, dkt. no. 293. To the court's regret and chagrin, the Federal Defender filed that motion almost five months ago, and the court has not acted on it. The fault for that lies squarely with the court. The court apologizes both to the defendant and to the government for its delay.

On June 7, 2007, a jury found the defendant guilty of conspiring to possess with intent to distribute and to distribute more than 500 grams of cocaine and more than five grams of crack, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B) and 836. Dkt. No. 182 at 1. It also found the defendant guilty of

1

knowingly possessing a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. §924(c). Id. at 2.

In 2007, 21 U.S.C. §841(b)(1)(B) imposed a mandatory minimum sentence of five years on a defendant convicted of an offense involving 500 grams or more of cocaine. It also imposed a five-year mandatory minimum sentence on a defendant convicted of an offense involving give grams or more of crack. Section 924(c) of Title 18 imposes a five-year mandatory minimum for possessing a firearm during and in relation to a drug offense; the court must impose that sentence consecutive to any other sentence imposed. At the time of the defendant's sentencing in mid-November 2007, then, the defendant faced a minimum sentence of ten years—five years on the drug charge and five years on the gun charge—regardless of the applicable sentencing guidelines.

The minutes of the sentencing hearing indicate that Judge Clevert overruled the defendant's objection to the conclusion that he was responsible for "1.5 kilograms of powder cocaine." Dkt. No. 203. (The court suspects the word "powder" was an error; a later-filed sentence reduction motion indicates that Judge Clevert calculated the defendant's guidelines based on 1.5 kilograms of *crack*; the base offense level for 1.5 kilograms of powder under the November 1, 2006 Guidelines Manual would have been level 26, not the level 38 that Judge Clevert started with. See Dkt. No. 265 at 2.) The November 2, 2007 guidelines manual, however, reduced the base offense level for 1.5 kilograms of crack to 36. https://www.ussc.gov/sites/default/files/

2

pdf/guidelines-manual/2007/manual/CHAP2-2.pdf, and Judge Clevert also concluded that the defendant was not a manager or supervisor. Dkt. No. 203. According to the later-filed sentence reduction motion, the defendant's base offense level for 1.5 kilograms of crack cocaine was 36 and he had a criminal history category of II. Dkt. No. 265 at 2. Level 36 in criminal history category II yielded a guideline range of 210 to 262 months on the drug count. https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2006/manual/CHAP5.pdf. Judge Clevert imposed the low-end sentence of 210 months (seventeen years six months) on the drug count and a sentence of sixty months (five years) on the gun count, to run consecutively to the sentence imposed on the drug count, for a total sentence of 270 months, or twenty-two years and six months. Dkt. Nos. 203, 207.

In 2012, after the U.S. Sentencing Commission reduce the drug guidelines, the defendant asked Judge Clevert for a sentence reduction. Dkt. No. 265. The Sentencing Commission's reduction of all drug offense levels by two took the defendant's offense level to 34 and his sentencing range on the drug count to 168 to 210 months. Id. at 2. Judge Clevert granted that request and reduced the defendant's sentence on the drug count to 168 months (fourteen years), which dropped his total sentence to 228 months, or nineteen years. Dkt. No. 266.

In 2014, the Sentencing Commission revised the drug tables again, and the defendant sought another sentence reduction. Dkt. No. 281. This time, his offense level was reduced to 32 in criminal history category II, resulting in a

3

range of 135 to 168 months. Id. at 3. Judge Clevert granted that motion and sentenced the defendant to a term of 135 months, or eleven years and three months, on the drug charge. Dkt. No. 282. That resulted in a total sentence of 195 months, or sixteen years three months. The Bureau of Prisons shows the defendant's release date as March 13, 2021. https://www.bop.gov/inmateloc/. He has been in custody since June 2007—twelve years and ten months.

It is against this backdrop that the defendant seeks another sentence reduction, this time under the First Step Act of 2018. He is eligible—he committed the offense of conviction before the Fair Sentencing Act went into effect, the FSA modified the mandatory minimum trigger amounts in effect when he was sentenced and he hasn't previously applied for or received a First Step reduction. Dkt. No. 293 at 3-4. He also argues that while he was convicted of conspiring to possess and distribute enough powder cocaine to trigger the same mandatory minimum, this court already has held that that fact doesn't preclude him from receiving a reduction. Id. at 6, citing United States v. Turner, Case No. 05-cr-11, at Dkt. No. 272 (E.D. Wis. Oct. 31, 2019).

The defendant argues that the court should use its discretion to grant him a reduction because he had legal defenses to the charges (although it appears the jury did not credit them); this was his first felony conviction; he came from a good family, was educated and had children; and he had no history of violence. Id. at 11-12. The defendant argues that if he had received points for acceptance of responsibility—even one point—he might be at a residential reentry center right now. Id. at 14. The defendant also argues that

4

he has done very well in prison, incurring no significant disciplinary infractions, learning how to drive a forklift and work at a recycling plant, serving the last few years at a low-security facility after being given a bus ticket and told to get himself there. Id. at 15. If released, he proposed to live with a friend in Chicago who works in construction.[1] Id. at 16. He asks the court to reduce his sentence on the drug charge to 113 months—just under ten years—for a total sentence of 173 months, or fourteen years and five months. Id. at 17-18.

The government opposes the motion. Dkt. No. 294. It argues, as the defendant anticipated it would, that because the jury found the defendant guilty of conspiring to possess with intent to distribute 500 grams or more of powder cocaine, his statutory penalties didn't change on the effective date of the Fair Sentencing Act. Id. at 4. While acknowledging this court's decision in Turner, the government argues that it "is obliged to request denial" of the defendant's motion because the Fourth Circuit Court of Appeals and most district courts have decided the issue differently. Id. at 4-6. The government also argues that even if the court sticks by its decision in Turner, it should exercise its discretion to deny the defendant's motion because (again, as the defendant anticipated the government would argue), the defendant already has received several sentence reductions, and his guideline range is no different today than it was on the date he was last resentenced. Id. at 6. The government

---

[1] COVID-19 has substantially changed the world since the date the defendant filed his motion, and Chicago has been hard hit by the pandemic.

5

argues that the defendant is serving today the same sentence as any defendant charged today with the same amounts of drugs attributed to the defendant. Id.

The court has noted that it did not act on the defendant's motion as promptly as it should have done, and five months have passed since he filed it. In the interim, this court and its colleagues have ruled on other First Step motions. In response to a couple of those rulings, defense counsel recently submitted a letter arguing that in considering a First Step motion, the court may (contrary to a ruling by another judge on this court, which this court referenced in one of its own rulings) consider post-sentencing conduct in deciding whether to grant a First Step motion. Dkt. No. 297. He points to the Fifth Circuit's decision in United States v. Hegwood, 934 F.3d 414 (5th Cir. 2019), which Judge Stadtmueller cited in holding that he could not consider a defendant's positive behavior in prison when deciding a First Step motion. Id. at 1 (citing United States v. Burks, Case No. 00-cr-225-3-JPS, at Dkt. No. 352, p. 7, n.6 (E.D. Wis. Mar. 18, 2020)). (This court, in its recent decision, indicated only that "[t]here is a question about whether a court considering a First Step motion should consider post-sentencing rehabilitation." United States v. Tyrone Young, Case No. 00-cr-225-pp, at p. 6 (E.D. Wis. April 10, 2020)).

The Fifth Circuit's decision, while persuasive, is not binding on this court. More to the point, the defendant is correct that the Hegwood decision does not say that a district court cannot consider post-sentencing rehabilitation or positive behavior in prison. In Hegwood, a defendant who had

6

been a career offender at the time of his original sentencing filed a motion for a First Step reduction, and argued that under case law developments that had occurred since his sentencing, he should not longer be subject to the career offender enhancement if the court resentenced him under the First Step Act. Hegwood, 934 F.3d at 416. The Hegwood court concluded that the First Step Act did not authorize resentencing the defendant without the career offender enhancement, because that is not what would have resulted had the sentencing court "plac[ed] itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act." Id. at 418. The court acknowledged, however, that a district court could consider the 18 U.S.C. §3553(a) factors "to the extent they are applicable." Id. And the defendant cites United States v. Rose, 379 F. Supp. 3d 223 (S.D.N.Y. 2019) for a rationale explaining why courts may and should consider the §3553(a) factors when deciding whether to grant a First Step Act motion.

This last question—the question of whether the court should consider the defendant's post-sentencing conduct—is relevant in considering the defendant's motion. While the defendant is *eligible* for a reduction, as the court has found in Turner, he is not the strongest candidate for the court to exercise its discretion in granting one. While the FSA changed the statutory mandatory minimum and maximum for the *crack* offenses, it did not change the minimum and maximum for the *cocaine* offenses. Today, the defendant is subject to the same mandatory minimum and maximum sentences on the powder cocaine

7

and gun charges as he was the day Judge Clevert first sentenced him. His sentencing guideline range is the same range to which he was subject when Judge Clevert last resentenced him in 2014—135 to 168 months. At the sentencing hearing and at every subsequent resentencing, Judge Clevert imposed the low end of the applicable guideline range. He never imposed a sentence below the low end of the guideline range, even though he had had the discretion to do so since the Supreme Court decided <u>United States v. Booker</u>, 543 U.S. 220 (2005) in January of 2005. The defendant moved a very large amount of drug weight during the time of the offenses. He implies that he should have received a reduction under §3E1.1(a) for acceptance of responsibility—despite going to trial—because, he says, he "appeared not to contest most of the evidence; instead he contested what the evidence meant—that is, whether he conspired with others or was operating independently." Dkt. No. 293 at 14. This argument has little persuasive effect; the defendant required the government, the court and the jury the time and expense of a trial, and in neither his *pro se* motion for a First Step reduction nor the motion filed by counsel does he express remorse or admit that he committed drug offenses. Dkt. Nos. 287, 293.

    The only rationale the court can see for granting the defendant yet another sentence reduction under these circumstances is if one of the §3553(a) factors warrants such a reduction. Nothing has changed about the nature and circumstances of the offense (§3553(a)(1)). Nothing has changed about the history and characteristics of the defendant pre-sentencing. <u>Id.</u> The questions

8

are whether the history and characteristics of the defendant post-sentencing are different, and whether any further incarceration is necessary to protect the public, deter the defendant and provide needed educational or vocational training. 18 U.S.C. §3553(a)(2)(B), (C) and (D).

The defendant says he has had only one disciplinary infraction in the over twelve years he has spent in custody—for having too many stamps. Dkt. No. 293 at 15. He has learned how to drive a forklift. He has worked at a recycling plant. He has spent the last few years at a minimum security camp, to which he transported himself after officials at his prior institution gave him a bust ticket. Id. He currently works at the wastewater treatment facility at the low-security camp at Marion. Id. at 15-16. He has successful children, with whom it appears he has stayed in contact. Id. at 16. He is forty-six years old—old enough, one would hope, to put the kind of behavior that landed him in prison behind him.

The court will exercise its discretion to grant the defendant a final sentence reduction. It does so to recognize the progress he has made while in custody, and mindful of the current public health crisis caused by the COVID-19 pandemic.

The court **GRANTS** the defendant's motions for a sentence reduction under the First Step Act of 2018. Dkt. Nos. 287, 293.

The court **ORDERS** that the sentence imposed in the judgment issued November 27, 2007, and the reduced sentence imposed on July 20, 2015, are **VACATED**. Dkt. Nos. 207, 282.

The court **ORDERS** that the defendant is committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **one hundred twenty-three months (123)** on Count One (the conspiracy count) and **sixty months (60)** on Count Two (the gun count), to run consecutively to the sentence imposed on Count One, for a total term of **one hundred eighty-three (183) months**.

The court **ORDERS** that the defendant shall be given credit for any time served in federal custody prior to this date, as calculated by the Bureau of Prisons.

The court **ORDERS** that upon release from imprisonment, the defendant shall be on supervised release for a term of **five (5) years on Count One and five (5) years on Count Two, to run concurrently with each other, for a total term of five (5) years of supervised release.**

The court **IMPOSES** the conditions of release imposed by Judge Clevert in the now-vacated November 27, 2007 judgment. The court **ORDERS** that if the defendant believes the court needs to modify any of those conditions due to the changes in the law or changes in the defendant's circumstances, he may file a motion asking the court to modify the conditions (identifying the particular conditions he is asking the court to modify, and describing the requested modifications).

The court **ORDERS** that the defendant shall pay a special assessment of **$200**, less any amounts paid since the original sentencing date.

The court **ORDERS** that within 180 days of the date that this court lifts restrictions on in-person hearings, or the date that Governor Evers lifts the Safer-at-Home order or it expires, the defendant shall make arrangements with his supervising officer to meet with Judge Pepper in her office to discuss his adjustment to supervision. The court will enter an amended judgment reflecting this sentence.

Dated in Milwaukee, Wisconsin this 21st day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**